## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

TURNER HELTON,

    Respondent,

  v.

SEATTLE POLICE DEPARTMENT,

    Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. 68016-1-I
(consolidated with No. 68910-0-I)

ORDER DENYING MOTION
FOR RECONSIDERATION AND
AMENDING OPINION

The respondent, Turner Helton, has filed a motion for reconsideration herein. The court has taken the matter under consideration and has determined that the motion for reconsideration should be denied, and that the opinion of the court should be amended.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and, it is further

ORDERED that the opinion of the court in the above-entitled cause filed April 8, 2013, be amended to read as follows:

> DELETE footnote 27 on page 12, which reads:
>
> [27] Helton does not seek an award of attorney fees on appeal.
>
> REPLACE with the following:
>
> [27] Although Helton requested attorney fees and costs on appeal, his request was improper in that he did not devote a separate section of his brief to that request. See Wilson Court v. Tony Maroni's, Inc., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998).

Done this 23rd day of __April__, 2013.

FOR THE COURT:

_____

_____

_____

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2013 APR 23 PH 4: 37

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TURNER HELTON,

    Respondent,

v.

SEATTLE POLICE DEPARTMENT,

    Appellant.

No. 68016-1-I

(consolidated with No. 68910-8-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 8, 2013

GROSSE, J. — A trial court has considerable discretion under the Public Records Act, chapter 42.56 RCW, in determining the amount of a per diem penalty to impose and the amount of attorney fees to award. Here, the trial court carefully considered the factors relevant to determining the amount of the per diem penalty, including the fact that the some of the withheld records were not subject to disclosure at the time of the records request and that some were subject to disclosure. Also, before awarding attorney fees, the trial court carefully reviewed Turner Helton's resubmitted fee application to ensure that it was proper under the governing case law and that it adequately addressed the court's concerns with the initial fee application. The court also made its own adjustments to the amount of fees Helton requested in his resubmitted application. While the per diem penalty and the award of attorney fees may not be in amounts we would have imposed, the trial court nevertheless did not abuse its discretion in imposing a $45 per day penalty and in its award of attorney fees. We affirm the trial court.

FACTS

Turner Helton filed a complaint with the Seattle Police Department (SPD) alleging that in November 2009, SPD officers used unnecessary force in taking him into protective custody.[1]  SPD's Office of Professional Accountability Investigation Section (OPA-IS) investigated Helton's complaint, concluded that it was unfounded, and closed the investigation.  OPA-IS informed Helton of its conclusion by letter dated June 2, 2010.  The letter listed the evidence OPA-IS considered in its investigation, which consisted of the incident report and follow-up records.  The same month, Helton filed an information request with SPD asking for this evidence pursuant to the Public Records Act (PRA).

By letter dated July 15, 2010, SPD informed Helton that because his complaint was determined to be unfounded, disclosure under the PRA was limited to (1) a redacted two-page Form 2.7 – SPD Investigation Summary Report and (2) a redaction log identifying 16 records Helton requested that were withheld from disclosure in their entirety.  With regard to the information withheld, SPD cited the same exemptions for all the information: "Information is essential to effective Law enforcement and right to privacy."[2]

In June 2011, Helton filed a complaint for relief under the PRA.  He alleged three violations of the PRA: (1) failure to produce the requested records within a reasonable amount of time; (2) assertion of inapplicable exemptions as a

---

[1] The police arrived at Helton's antiques shop in response to a 911 call from a person in Salt Lake City who worked for Helton's insurance company.  The person reported that Helton had threatened to kill himself while talking to this person on the phone about the cost of his prescription drugs.

[2] SPD also cited the medical information exemption as a reason for withholding the Seattle Fire Department medical incident report.

basis for redacting the Investigation Summary Report; and (3) assertion of inapplicable blanket exemptions to justify the withholding of the remaining 16 records. Helton also sought the maximum statutory penalty ($100 per diem), alleging as justification SPD's bad faith violations of the PRA.

On Helton's motion, the trial court ordered SPD to show cause why it should not find that it violated the PRA. The first hearing on the order to show cause, held on August 5, 2011, ended without the court reaching a conclusion. On August 18, 2011, before the second hearing was held, the Washington Supreme Court issued its opinion in <u>Bainbridge Island Police Guild v. City of Puyallup</u>[3] in which it held that a police department's investigation reports concerning an unsubstantiated allegation of sexual misconduct by an officer were not exempt from disclosure under the PRA. Only the officer's name was held not subject to disclosure. On August 30, 2011, SPD produced the records Helton requested with the subject officers' names redacted.

In September 2011, the trial court held a hearing on Helton's motion for a PRA penalty and for attorney fees and costs. The trial court determined that a $45 per diem penalty was appropriate.[4] The court entered an order consistent with its oral ruling.

With regard to attorney fees, the trial court directed counsel to resubmit the fee application, this time paying close attention to the guidelines set forth in

---

[3] 172 Wn.2d 398, 259 P.3d 190 (2011).
[4] The trial court's reasons underlying its determination are discussed below.

<u>Mahler v. Szucs</u>.[5] Helton resubmitted his application. The court determined that the second application adequately remedied the deficiencies in the first application, and the court awarded Helton attorney fees and costs.

SPD appeals the order imposing the per diem penalty and awarding Helton attorney fees and costs.

ANALYSIS

<u>Standard of Review</u>

We review an award of per diem penalties and attorney fees under the PRA for abuse of discretion.[6] An abuse of discretion is a manifestly unreasonable decision or one based on untenable grounds or untenable reasons.[7] A decision is manifestly unreasonable if the court, despite applying the correct legal standard, adopts a view no reasonable person would take.[8]

<u>Per Diem Penalty</u>

The PRA gives the trial court discretion to award a person who prevails against an agency in an action seeking a public record "an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record."[9] Determination of a PRA per diem penalty involves two

---

[5] 135 Wn.2d 398, 957 P.2d 632 (1998), <u>implied overruling on other grounds recognized by</u> <u>Matsyuk v. State Farm Fire & Cas. Co.</u>, 173 Wn.2d 643, 272 P.3d 802 (2012).
[6] <u>Yousoufian v. Office of Ron Sims</u>, 168 Wn.2d 444, 458, 229 P.3d 735 (2010).
[7] <u>Yousoufian</u>, 168 Wn.2d at 458.
[8] <u>West v. Thurston County</u>, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).
[9] RCW 42.56.550(4). This provision provides in full:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including

4

steps: (1) determining the amount of days the party was denied access to the public record and (2) determining the appropriate amount of the penalty.[10] Although the existence or absence of an agency's bad faith is the principal factor for consideration, no showing of bad faith is necessary before a penalty may be imposed on an agency.[11] Also, "a good faith reliance on an exemption will not exonerate an agency from the imposition of a penalty where the agency has erroneously withheld a public record."[12]

In Yousoufian v. Office of Ron Sims, the court set forth guidelines for determining an appropriate penalty for a PRA violation.[13] Mitigating factors that may decrease the penalty are

> (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exemptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.[14]

Aggravating factors that may increase the penalty are

> (1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions;

---

> reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

[10] Yousoufian, 168 Wn.2d at 459. Only the appropriateness of the amount of the penalty imposed is at issue here.
[11] Amren v. City of Kalama, 131 Wn.2d 25, 36-38, 929 P.2d 389 (1997).
[12] Amren, 131 Wn.2d at 36.
[13] 168 Wn.2d 444, 459-63, 229 P.3d 735 (2010).
[14] Yousoufian, 168 Wn.2d at 467 (footnotes omitted).

(3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.[15]

The Yousoufian factors may overlap, are for guidance only, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations in determining a PRA penalty.[16] No one factor should control, nor should the factors infringe on the trial court's considerable discretion to determine a PRA penalty.[17]

Here, in deciding that a $45 per diem penalty was appropriate, the trial court carefully considered the Yousoufian mitigating and aggravating factors. The court found that SPD in good faith complied with the PRA's procedural requirements, including responding promptly to Helton's request, and that there was no defect in SPD's training and supervision of its employees. As to aggravating factors, the court determined that SPD "did not disclose the matters that they were required under law to disclose" and gave "too short a shrift" to Helton's request. The court also determined that SPD gave an unreasonably narrow and literal interpretation to the basis upon which it could withhold and withheld documents that were clearly disclosable, such as Helton's own

---

[15] Yousoufian, 168 Wn.2d 467-68 (footnotes omitted).
[16] Yousoufian, 168 Wn.2d at 468.
[17] Yousoufian, 168 Wn.2d at 468.

statement and the Seattle Fire Department medical record. The court specifically found that SPD did not act in bad faith, but nevertheless found a basis for imposing a $45 per diem penalty "to tell agencies other than Seattle Police Department and to tell the public that they can trust that the agencies will recognize this important duty to administer the public disclosure laws in good faith."

SPD argues that the trial court's imposition of a $45 per diem penalty was an abuse of discretion because its initial decision to withhold the records Helton requested was based on a reasonable interpretation of the then-current case law and that once Bainbridge Island Police Guild was issued, it promptly disclosed the records that were rendered not exempt from disclosure under that opinion. And, it argues that the trial court should not have justified the penalty as a statement to other agencies as to the need for compliance with the PRA. Rather, it argues Yousoufian allows as an aggravating factor the need to deter future misconduct by the agency at issue.

The trial court, in imposing the $45 per diem penalty, acknowledged that some of the records did not have to be disclosed at the time of Helton's request. But, the court also determined that SPD gave "too short a shrift" to Helton's request and read the PRA too narrowly by refusing to disclose records that were clearly not exempt from disclosure such as Helton's own statement to SPD and the medical incident report. SPD does not dispute that these records were not exempt from disclosure. SPD's good faith reliance on a PRA exemption does not

exonerate it from the imposition of a penalty where it erroneously withheld a public record.[18]

Further, because the Yousoufian factors are not an exclusive list of factors the court should consider, SPD's argument that the court abused its discretion in imposing the penalty to deter future misconduct by agencies other than SPD, rather than misconduct by only SPD, is without merit.

SPD argues that this court's decision in Sargent v. Seattle Police Department[19] shows that the $45 per diem penalty imposed in this case was an abuse of discretion. In Sargent, SPD challenged the trial court's imposition of the maximum per diem penalty of $100 for SPD's failure to disclose records relating to an incident involving an altercation between Sargent and an off-duty SPD officer. This court agreed that the $100 penalty was an abuse of discretion as disproportionate to SPD's actions:

> SPD timely responded to Sargent's requests, properly withheld the criminal investigative records (and suggested timing for a "refresher" request), disclosed the records within two months when they were not exempt, properly withheld the disciplinary investigation file, and kept Sargent informed of the status of the criminal and disciplinary investigations. SPD violated the PRA only insofar as it failed to provide Sargent's jail records and failed to justify certain exemptions. And SPD's reliance upon a categorical exemption for witness identification was hardly an unreasonable reading of the case law. Finally, the trial court's finding of bad faith is not supported by the evidence, and there is no showing that SPD was negligent.[20]

---

[18] See Amren, 131 Wn.2d at 36.
[19] 167 Wn. App. 1, 260 P.3d 1006 (2011), review granted, 175 Wn.2d 1001 (2012).
[20] 167 Wn. App. at 24-25 (footnote omitted).

Had the trial court here imposed the maximum $100 penalty, then Sargent would provide reasonable grounds to find no basis for the penalty. But the court's penalty was far less than $100 per day. Given the considerable discretion given to the trial court, and the undisputed fact that SPD improperly withheld some of the requested documents, we will not disturb the trial court's decision to impose the $45 per diem penalty.

Attorney Fees

In addition to a per diem penalty, the PRA provides for an award of attorney fees to a person who prevails against an agency in an action seeking to inspect or copy a public record.[21] We review an award of attorney fees under the PRA for abuse of discretion.[22]

The trial court directed Helton to submit a revised fee application addressing the factors enumerated in Mahler v. Szucs, including the experience of the attorneys involved in the case, block billing, contemporary records, and conferencing among counsel. In Mahler, the court directed courts to use the lodestar method when determining a fee award. Under that method, the court first determines that counsel expended a reasonable number of hours in securing a successful recovery; second, the court determines the reasonableness of the hourly rate charged; and third, the court may, in rare instances, adjust the lodestar fee upward or downward.[23] The court also stated that the lodestar

---

[21] RCW 42.56.550(4).
[22] Kitsap County Prosecuting Attorney's Guild v. Kitsap County, 156 Wn. App. 110, 120, 231 P.3d 219 (2010).
[23] Mahler, 135 Wn.2d at 433-34.

methodology can be supplemented by an analysis of the factors in RPC 1.5(a) relating to the reasonableness of a fee.[24]

Here, the trial court engaged in a lengthy analysis of Helton's revised fee application and the guidelines set out in Mahler. Additionally, the court issued a detailed written order awarding Helton fees in the amount of $132,585.50. The attorney fee award is supported by the declarations Helton submitted along with his fee application, including a declaration of attorney Shelley M. Hall, attesting to the reasonableness of counsel's hourly rates and hours billed. SPD did not submit evidence to rebut Hall's declaration until its motion for reconsideration. The trial court properly declined to consider this evidence presented for the first time on reconsideration.[25]

SPD argues that the trial court's award of fees to Helton constitutes an abuse of discretion because, it alleges, Helton's revised fee application, submitted at the trial court's direction after the court found Helton's first application deficient, contained the same deficiencies that the court noted in its initial fee application. The resubmitted application is not the same as the initial application, but rather contains a number of downward adjustments in the time

---

[24] Mahler, 135 Wn.2d at 433 n.20. Those factors are (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent; and (9) the terms of the fee agreement between the lawyer and the client. RPC 1.5(a).

[25] Eugster v. City of Spokane, 121 Wn. App. 799, 811, 91 P.3d 117 (2004).

billed, which addressed the trial court's concerns about billing for interoffice conferences. Also, the trial court made additional adjustments and deductions to address matters that arose during the hearing on the second application. The court's determination that the revised fee application adequately addressed the court's concerns was not an abuse of discretion.

SPD also argues that the trial court's attorney fee award was punitive. But the court specifically acknowledged that an award of attorney fees is not meant to be punitive.[26] The court's order shows that its award was properly based on the Mahler guidelines.

SPD also argues that the attorney fee award is an abuse of discretion because fee awards in other PRA cases have been of a much smaller amount than the amount awarded here. But, SPD fails to take into account the amount of work it required Helton to undertake because of its litigation tactics. As the trial court found:

> The record is clear that SPD chose to dispute the PRA complaint. The scope and extent of courtroom hearings and underlying briefing may have exceeded the amount of work necessary to present a typical PRA case. Plaintiff was required to prepare for the testimony of SPD witnesses and to respond to SPD's claimed PRA exemptions. The time expended by Plaintiff's counsel has been found to be reasonable under the circumstances.

---

[26] The court stated:
> And I agree with that. Attorney's fees are not here to penalize. Penalties taking place, they can carry out in the penalty that's been provided. We usually have a penalty statute. That's where the penalty is. Nobody should be penalized for the attorney's fees. There is a determination of liability for reasonable attorney's fees. We are here to just talk about the reasonableness, correct?

SPD has failed to show that the trial court's award of attorney fees constitutes an abuse of discretion.[27]

Affirmed.

WE CONCUR:

---

[27] Helton does not seek an award of attorney fees on appeal.